Systems, 21-2986. Thank you.  Mr. Abbott. May it please the court. Good afternoon. My name is Blake Abbott and I represent the appellant in this matter. Your honors, we respectfully request that this court reverse the lower court's dismissal of plaintiff's complaint and reinstate it. Your honors, the record and the complaint are clear. Until March of 2020, students enrolled in Touro's on-campus programs, as mutually expected and as bargained for, were delivered in-person instruction and access to on-campus facilities. Then, partway through the spring 2020 semester, they were no longer given the services that they had bargained for. Although Touro was no longer able to provide students with the services and access that were bargained for, Touro elected to keep the money, leaving the students to bear the burden of Touro's breach. Are there any cases in New York that raise the same issues, not just with respect to Touro, but to any other New York-based college or university? Is there any case that's winding its way through the New York court system that you're aware of? Yes, so there's several similar New York cases out there. There are a couple working their way through the courts of appeals, and there are actually a couple at the lower level that have survived the motion to dismiss stage. And my firm has had the opportunity to represent some of those cases, the first being Ford v. Rensselaer Polytechnic Institute, another one being Bergeron v. Rochester Institute of Technology. Both of those courts employed the appropriate, implied-in-fact contract analysis that this court, the lower court rather, failed to utilize when interpreting the contract between appellant and Touro. May I ask you, in New York, there seems to be a pretty strict requirement for a specific promise, which distinguishes it from the approach taken in other states. How do you satisfy that requirement in this case? And I recognize we're at the pleading stage, but tell me how you satisfy that. Absolutely, and thank you, Your Honor. So some jurisdictions do utilize more of a reasonable expectation standard when interpreting contracts between universities and its students. And New York is like other jurisdictions in which an individual need to identify sufficiently the implied-in-fact contract via several different ways. The first can be identification of a course catalog. The second can be identification of circulars made available to the student. But it has to be what do they say in there? It has to be relatively specific, doesn't it? To an extent, Your Honor, you are absolutely correct, but these promises are absolutely taken in context of one another. Because of the nature of a student's relationship with its university, we do not have the luxury of one fully integrated written contract. Rather, we have an implied-in-fact contract that is comprised of several different statements made. That doesn't absolve it of specificity. It still has to be specific. That's correct, Your Honor. And isn't that the problem here, is that the promises you're seeking to impose are rather specific, but they're not made anywhere within any of the items you've identified, are they? Well, respectfully, Your Honor, we have identified in the- Tell me in your complaint where the promise that it's in person classes. Well, we do identify in our complaint in several places, including paragraphs 123 on page 28 of the appendix, where Toro actually promises appellants all the benefits of an integrated campus experience. Now, they also, later on, promise its students access to research facilities, classrooms, auditoriums, and several other things like that. And it's these promises that are taken in context with all the other promises that gives rise to this expectation, this implied-in-fact contract. And I think that what's important is there is another jurisdiction out there that implements a similar specificity pleading standard for breach of contract, and that would be the Gozeman v. Loyola University Seventh Circuit case. Now, in that case, Illinois has a very, very extremely similar pleading standard when it comes to breach of contract actions. And like the lower court here, the Seventh Circuit actually reversed the lower court's dismissal of the tuition and fee claims because where that court erred, like the lower court here, is that the lower court had taken a step-by-step analysis, looked at the promises through a microscope and out of context. Loyola, Gozeman v. Loyola, found that these promises must be read in context. And so what that court did was, in reversing the lower court, was look at the promises, looked at the course catalogs, looked at the circulars, looked at whether or not Loyola actually offered a cheaper online alternative. Here, Toro does that, and we identify in that complaint. And then they also looked at pre-pandemic course of dealings. And I'm not saying that any one of these things would actually create the promise, but it's the combination of all of them read in context that gives rise to this implied-in-fact contract. And Gozeman v. Loyola certainly identifies that because they utilize a similar standard than New York does. Well, I'm looking at language here that does say that TCDM students utilize, and I'm skipping over some to emphasize others, they utilize an anatomy lab and they utilize a simulation training center, which I assume is the same thing as the 113-seat dental simulation laboratory. Is that a correct assumption on my part? I believe that's reflected in the record, yes, ma'am. Okay, now, during the remote period, what was there to allow for the anatomy lab and simulation training laboratory use? Was it not available at all? Was it made available remotely in some way? So it's my understanding of the record and the facts that we have that it was not available to the dental students. I think that to some extent they may have been available on a limited and maybe an emergency basis for the medical students, but it's my understanding. I understand the medical school had different access availability,  does this mean there was no opportunity during the remote period to do dental simulations? It's my understanding, and I believe that Apelli will agree with me on this, that they had to close on-campus facilities and they were not available to students, and that would have been a uniform decision made on their part. But I do want to close this up with another instance in which a promise for state-of-the-art facilities was promised and ultimately not delivered and found to have actually been sufficient to allege an implied-in-fact contract for on-campus education, and that would be Ansari versus New York University, which is another case involving a dental student that the court actually found that they had sufficiently alleged an implied-in-fact contract. And before my time is up, I do want to touch on the unjust enrichment alternative pleading dismissal in this case. Your Honors, the lower court erred in dismissing the unjust enrichment claims here because the lower court failed to realize that when there is actually a dispute as to the extent of the contract here, we allege that there is a contract for on-campus education. They dispute that fact. Where there is that dispute, and I see my time is up, Your Honors, am I permitted to finish? Good, of course. Okay, where there is that dispute, unjust enrichment can certainly lay in the alternative. Additionally, where there are questions of enforceability for an avoidance doctrine, such as impracticability or impossibility, then certainly one can plead in the alternative unjust enrichment, and Schaeffer versus George Washington solidifies this as well as, well, for the most part, Schaeffer versus George Washington solidifies this, and I'll reserve the rest of my time for rebuttal. Thank you very much. Counsel. I'm a foot shorter. No, no, I don't blame you. May it please the court. My name is Mariah Passarelli from the law firm Cosen O'Connor, representing the Apolli Toro College and University System. Thank you for your time today. I want to address some of the items that the court brought up in the appellant's oral argument in order. So with regard to a specific promise, Your Honor, you're right. New York courts do recognize that there must be a specificity in a contractual agreement in order for it to be enforceable. What about the language I cited to your adversary that they're told that students will utilize an anatomy lab in a simulation training center? I mean, I assume it's a simulation training center for doing dental work. Yes, it is, and I would like to make two points in response to that, Your Honor. Please. The first point is that a student is able to utilize it doesn't mean that they have unfettered access. I don't believe that's a promise of unfettered access for the entirety of every day of semester, regardless of what's occurring in the world. This was an occasion of the pandemic. Obviously, the Toro on-campus instruction shut down because of the COVID-19 pandemic. Not at the will and whim of Toro, not because of construction, and not for the entirety of that semester. So the first point I would make is a promise of access is not necessarily a specific promise of continuous every single day access. I mean, I know we're at the pleading stage, but is it Toro's position that these students nevertheless received remotely all the training and all of the simulated experiences that they would have been able to obtain on campus? I mean, were they ready to advance to the next level when the semester had concluded? Toro's position is that the answer is yes, but I would note a few things there. There's no evidence to suggest that Mr. Yotis was at the stage in his degree program where utilization of the simulation lab was warranted as a part of his degree. We're not yet at the adequacy of the class part of this discussion, so whether or not all students were able to complete their degree programs on time, notwithstanding the two-month inability to access the simulation labs, is not really at issue. Mr. Yotis hasn't put into the record any evidence to suggest that he needed to use an in-person lab and was prohibited from doing so. So with regard to the specific promise, that sort of also brings us into the next piece of the university's argument, which is that in the complaint, and again in response to Toro's motion to dismiss, the appellant, Mr. Yotis, argued that there was an actual contract. He said that the contractual terms between Toro and him were clear. He doubled down on that in responding to the motion to dismiss, saying that there can be no doubt there was a clear contract. For the first time on appeal, they've changed their tune to be that there was an implied contract. We think that that is a change in language of convenience, that you can't, for the first time, raise a theory of implied contract on appeal when in the lower court you were raising the existence of an actual contract. So I wanted to point that out. That matters a lot because the Loyola case that my opponent cited in his argument is an implied contract case. It's not a case about the existence of an actual contractual agreement between two parties. It's an implied case. Whether the court reads the Loyola case and its decision by the Seventh Circuit as being implied or actual, there are very important differences. Contract cases, implied or otherwise, can't be reviewed in sort of generalizations. It's about literally the terms of the bargain for exchange between the parties. And because there's very different disclaimer language in the only two documents that Mr. Yotis cites in support of his argument, the dental school's course catalog and various excerpts from the website, because there are key differences in the language used by Toro versus the language used by Loyola, the Loyola case can't be instructive to this court. You have to actually analyze the terms of whatever Toro's obligation was created by the course catalog. That course catalog, the Dental School of Medicine's course catalog, lists out a series of important disclaimer language. It says specifically, the payment of tuition permits a student to register and take courses and programs available and offered. The catalog is neither written nor meant to confer any rights or privileges on students or impose any obligations on Toro. The policies, procedures, and practices therein may be modified, supplemented, or discontinued by Toro in whole or in part, with or without notice. Toro takes absolutely no promises, assurances, representations, guarantees, warranties, or other statements concerning its courses and programs and a student's academic success therein. Toro reserves the right to make changes to the curriculum at any time without written notice. The fees are refundable only during the add-drop period. So it's not possible to read the course catalog and believe that it creates a contractual obligation to hold in-person labs every single day of a semester, for instance. But that if language that clearly allows it the discretion to change the terms of the curriculum with or without notice isn't part of a contract. I don't think you can piecemeal through the course catalog and create contractual obligations where you agree with the language and destroy contractual obligations where you don't. Let me just ask you what is a perhaps absurd hypothetical just to test the limits of what you're arguing. I mean, Toro couldn't have said, we're going to remote learning, and since we can't train you in dentistry, we're going to read Moby Dick, you know, for the semester. Sure. Okay? So you agree that with that much, they had to provide dental training. Yes. That at least was implicitly promised, right? Absolutely. Now, to the extent we're at a motion to dismiss, why is there pleading that they didn't have access to simulation labs and to anatomy labs, which one would think was part of dental training, is an essential part of dental training? Why doesn't that at least get them past the pleading stage, and then in discovery you can say, well, you don't do that until first semester of second year or whatever? I think because even at the pleading stage, Your Honor, there has to be sufficient specificity in the state of New York with regard to what the contractual terms are. And even reading Mr. Yotis' complaint in his appellate briefs, there isn't sufficient specificity. What is clear and the parties agree on is that if Mr. Yotis paid tuition and fees, he would be allowed to register for classes, take those classes, and receive course credit towards graduation. Some of those fees had names attached to them. Yes. And the one that jumps out, of course, is the campus fee. Why shouldn't we assume that a campus fee promises you at least something relating to the campus, which once you shut down, you were no longer affording students? Two important points about that. Thank you, Your Honor. There are two separate breach of contract claims here. One is breach of contract with regard to tuition. The other with regard to fees. Yes. So with respect to fees and the campus fee, a few things to note. First of all, the semester had already begun. It was more than a third over by the time the university had to shut down because of the government mandates. Second, campus fee, tech fee, providing education even remotely to students isn't free. So Toro University, to the extent that it pays money to, you know, occupy its facilities, to the extent that those facilities were used to house the technology necessary to provide online classes, those fees still needed to be paid by the university for the remainder of the semester that was canceled, for the remainder of March and April and the very beginning of May of 2020. So the fact that the words campus fee are used, I would submit to you, is not sufficient to say that an automatic full refund of an entire semester of campus fee was warranted. More importantly, Mr. Yotis doesn't plead what campus fee meant. He doesn't say campus fee was so that I could access these specific buildings for every single day of the spring 2020 semester. Because he doesn't plead that, because he can't demonstrate what campus fee or tech fee or any other fee related to, because he can't demonstrate that Toro didn't need to continue to spend that money even in light of remote learning, I don't think he can make a sufficient claim for the breach of contract with regard to the fees he paid. But I think, isn't there a suggestion in the papers that the online classes that Toro does offer don't have these fees attached to them? There is that suggestion, but I think even there, your honor, there are important differences to note. Online class and degree programs at Toro begin from inception online. So those instructors are paid to be online instructors. Those courses are designed to be online courses. In this situation, where we had a midstream change through no fault of Toro's, out of Toro's control, from in-person classes to remote classes, the costs associated with what used to be on campus becoming remote, the tremendous ramp up of technology and instructors who were by design going to teach in person, able to shift to teaching online, was necessary. That doesn't exist when you have a program that is by design a remote program from inception. So I don't think that those are an apples to apples comparison. I understand, certainly, your point. Go ahead. The district court didn't see the need to reach the issue of impossibility. Do you want to talk about that at all? Sure. There are- I mean, the campus wasn't shut down because Toro decided to shut it down. The governor shut it down. Correct. So to the extent that there was a contractual obligation with adequate sufficiency regarding in-person instruction, which obviously we dispute, our position is that it was impossible, it was made impossible by the government, local and state government mandates, that Toro was facing to continue in-person instruction. We view it as veritably a Hobson's choice. If we canceled all the classes and refunded everybody's tuition for that semester and fees and they graduated a semester late, we would have had a problem. If we kept in-person instruction, even though there were government, local and state government mandates for us to cease, we would have, in addition to jeopardizing potentially the health of students and employees, violated the government mandates. There was an impossibility. Did Mr. Yodus withdraw? He did not. He continued? He continued. He received credit for all the classes he completed that semester. So he doesn't seek rescission. He seeks breach? He does, is my understanding. Breach from you for something that the governor closed? That is our position, Your Honor, yes. All right. Thank you. Let me ask you two questions. First, I thought you were going to address unjust enrichment. I was. I ran out of time and I'm happy to. Well, I'm going to give you a little bit more time to address that. Thanks. With regard to unjust enrichment, Toro's position is that because there is a contract claim, because at the lower court it was pled as a contract, not an implied contract, that unjust enrichment can't exist in tandem, that it's settled in the Second Circuit, that you can't plead in the alternative and that you were unjustly enriched when you are simultaneously pleading there is specificity to a contract and the contractual terms were not fulfilled. So our position is that unjust enrichment and a breach of contract case can't exist at the same time. My opponent is correct. What if we agree with you that they don't have a contract claim? Could they perhaps have an unjust enrichment claim if we tossed the contracts claim? I think they could except for that the unjust enrichment claim is based on the identical set of facts. So to assume that we were unjustly enriched or to conclude that we were unjustly enriched would be to conclude that we made a promise and essentially didn't deliver on it and were enriched unjustly as a result. The facts merge. The facts of the contract claim merge. Let's stay with the fees. Okay. If we were to conclude that there's no breach because the fees are not stated with that kind of specificity, etc., when you were operating under a government closure mandate. Nevertheless, to the extent the fees had to be, had to cover the one-third, but there wasn't anything that had to be covered for two-thirds of the semester, wouldn't they have at least a plausible argument, which is all they need at this point, a plausible argument that you were unjustly enriched? Mindful of the standard, Your Honor, respectfully, I don't think so. So to have a plausible argument that those fees were somehow used by Toro unjustly in an enriching way, the plaintiff would have had to have pleaded, pled, excuse me, some way that the fees were used. You'll find that the complaint is devoid of any allegations regarding how those fees were used. It's just the name of the fees. I think even at a Rule 12b-6 standard, that is pretty threadbare for raising an unjust enrichment claim. It had to somehow be tied to a cost that wasn't incurred. Correct, yes. As a result of the termination of the on-campus instruction. That's Toro's position, Your Honor, yes. How are they supposed to know that at this point? I mean, they don't know how you used the money. I think... You explained that you had added tech fees because now you had to support everything online. But you had a tech fee. Did the campus fee get transferred to that or did the campus fee just go into the general treasury? I don't know the answer to that, Your Honor, but I would also submit... But neither do they. And so how are they supposed to at this point? And all they're saying is that they were charged fees that presumed a campus training because it was called a campus fee. And for two-thirds of the semester, there was no access to the campus. I think respectfully that even with a liberal pleading standard, the existence of a thing called a certain fee doesn't, even at a 12B6, establish that the fee was expense we didn't incur or expense that was used to unjustly enrich the university. It's just my... I understand. My position is, though, that that falls short even of a 12B6 standard. They didn't plead, for instance, and they could have, that those fees were, upon information and belief, tied only to on-campus instruction. And when on-campus instruction was canceled, those fees were no longer needed by the university. They didn't even do, upon information and belief pleading. They just list the name of three types of fees and reach a presumption that those were specific. What is a campus fee? Is that a recognized term anywhere? It varies across higher education institutions. No, no, no. Okay. If we get it to higher education. No, right. No, Your Honor. I'm using Turo. What is a campus fee? It's used to pay for security and used to pay for keeping buildings open. And it's our position that that... In the supplemental appendix 59, a cost of attendance, tuition and fees. Administrative fee? Does that include a campus fee? The administrative fee? Yeah. I think it is separate. Materials fee? Separate. Technology fee? Separate. Health insurance? Separate. So what is a campus fee separate and apart from those things? I'm not familiar with the bill you're looking at. I might have been mistaken that the campus fee is in that document included in the administrative fees. But buildings are paid for and secured. Facilities are paid for. But that continued to need to be the case though campus was remote. So it's not like we gave up the buildings or were able not to secure them or were able not to keep them. But you can't point me to something in this record where there's something written that says this is the campus fee. No, I can't. I don't believe it exists in the record, Your Honor, no. Thank you.  Ms. Stratton. May it please the court, just a few points on rebuttal, please. At the outset I would like to point out that my opponent has said that we have addressed or alleged an express contract only in our pleadings and briefed it at the lower level that way. We have alleged the complaint in such a way and briefed it and argued it at all levels in an implied, in fact, contract manner. And that's the way that New York interprets these laws. So I just wanted to say that at the outset. Next, as far as access to campus facilities and services, it is absent additional language in exchange for, it is for access on a continualized basis. And you premise that on what? Well, that's just basic common law. When you pay for access of something you can. No, something that's in the record that ties the campus fee to that? I wasn't specifically speaking to the campus fee, but as far as that goes, it's just that the position and the point that I'm trying to make is absent additional disclaimer language. When someone pays, as we've alleged, for access to certain campus facilities and services, that is a breach when there is no longer- Well, the toro reserved the right to alter those services and wanted to offer it clearly in its catalog. So how can you have any reasonable expectation that you can rely specifically on representations of the catalog when it's disclaimed? Right, Your Honor. Either an implied, in fact, or a contract. Right, Your Honor. And such a vague and generalized disclaimer that toro has has been addressed by multiple courts, and none of which have found them to be dispositive in cases such like this. We can look to Schaffer. It wasn't clear enough? It was not clear enough. But there have been situations in which it has been clear enough. And those disclaimers include things like force majeure clauses and specific allocation of financial risk in the event- Well, I want to talk to you about force majeure in a minute, but if we disagree with you, that's the end of your case, isn't it? As far as the disclaimer goes, Your Honor. Your claim for a breach, that you didn't have a reasonable expectation of that, that the terms didn't guarantee you a right to have a class on campus. In the event that such a disclaimer would cover that, I think that it would show that they had reserved the right and both parties understood that. But we don't have that language in this case. We don't have disclaimer language that says- Well, I said if we disagreed with you, Your Honor. You can use it all the time you want, but I don't- Let's get to force majeure. How is it the university saddled with this when the governor closes it down? Did you seek rescission? No, Your Honor. Did your client stay on and continue to go to school? The clients were offered a materially different price. No, just answer my question. Did he stay on and go to school? The client continued his classes- Did he answer yes or no? The client continued his coursework and got his credits. So he got his credits, he went to school when the governor closed the school, and he wants his money back. That's correct, Your Honor. All of his money? No. The money that is being sought here is the difference between what was contracted for and what was ultimately provided. Did he earn his dental degree? No, Your Honor. And that was because he withdrew? Eventually he did not, but he had completed the spring 2020 semester, if that's the question that you're trying to ask. So he got his general credits that were contained within the catalog, and you say he's entitled to money back because he didn't get them by going in person to class. Is that it? Right. So his credits weren't worth as much as they would have been had he gotten them in person? There's a difference in value? It's not the value of the credits, Your Honor. It's the value of the product being purchased. What was the product being purchased? The product being purchased, Your Honor, was on-campus, in-person education. Now, that was delivered- It's different in value from the credits, three credits for molars one, okay? Three credits for molars one. It's different if he got it online, or if he got it by being on campus for half the semester, and not being on campus for the rest of the semester, than if he'd been on campus for the whole semester. It's different in value? We're having a misunderstanding here. It's not that those credits have a different value. Well, you just told me that he's entitled to damages because his education is different in value. And so I'm testing your premise now. He got three credits for molars. It's not worth as much if he'd gotten it and been in class on campus all semester long. Is that it? Your Honor, he could have retrieved those credits in a couple of different ways. In one of those ways- Of course, but is there a difference in the value of the three credits? No, there is not a difference in the value. There's no difference. Then what's your damages? The damages is the difference between the cost of on-campus education and online education. So you think that because Toro might have had reduced costs for something that was imposed upon them, they should refund to you if they'd had lesser costs, the difference? It is that there is a fair market value of less value for online education than it is for on-campus education. So you do think that the three credits for molar is worth less if it's not gotten through in-person instruction? Respectfully, no, Your Honor. What we are trying to say here is that they bargained for and paid a premium for the ability to learn on campus. Ultimately, he was only able to do that for half the semester. I taught a class at Cornell Law School for a full semester totally remotely. Did my students get less than the students that I'm teaching this year who I'm teaching in person? It depends on the circumstance, Your Honor. Tell me, is that your theory? Our theory is that there is a lesser market value for an online only degree program. Let me ask about that. When you say there's a lesser market value, this is why I asked if your client finished his degree. I mean, the value of the first semester is that it allows you to take the classes of the second semester and then the third and move toward a degree. If I'm understanding you now, your client's getting his credit didn't hamper his continuing education toward a dental degree. Am I right? That's correct. And that's not necessarily what our case is about. Our case is about paying a premium to utilize things you can only get on a college campus. Well, now let's ask about the premium. Truro didn't offer an online dental program before the pandemic, correct? That's correct, Your Honor. How are you going to measure that, that it had a lesser value? Well, market damages can be measured, and we intend to utilize experts in order to achieve that. But what we do know is that Truro itself does have an online only program. What's your theory? I mean, at the pleading stage, we'll look at it in the light most favorable to you. But is it that your client didn't get some kind of hands-on experience or just that he didn't have the ability to walk among the trees and whatever scenery there was on the Truro campus? A combination of all of that, Your Honor. And with those on-campus benefits, there carries a market value. And it's the difference between the on-campus benefit market value and the remote instruction that was provided during the latter half of the spring 2020 semester is the damages that we are seeking in this case. Did he try to withdraw, you know, on the theory that, look, this is no longer valuable to me because I'm not just interested in the dental training. I'm interested in the campus experience. Did he try to withdraw and seek money back before the semester ended? I don't believe that's in the record. And to my knowledge, I don't think that he sought to withdraw and seek his money back. I thought perhaps it was somewhere in the record, but I'll just accept it. Thank you. Thank you very much. Thank you. What was the decision?